## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Aayonia Davis,

                  Plaintiff,       Case No. 25-cv-11100

v.                               Judith E. Levy
                                United States District Judge

Berkley Urgent Care, P.L.L.C.,
                                Mag. Judge Elizabeth A.
              Defendant.   Stafford

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT [11]

Before the Court is Defendant Berkley Urgent Care, P.L.L.C.'s motion to dismiss Plaintiff Aayonia Davis' First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 11.) For the reasons set forth below, the Court (1) GRANTS Defendant's motion, (2) dismisses all claims in Plaintiff's First Amended Complaint, and (3) allows Plaintiff to file a Second Amended Complaint within fifteen days of the date of this Opinion and Order.

## I.   Background

Plaintiff brings this employment discrimination case (based on race, gender, disability, and weight) under federal and state law against Defendant, her former employer. Plaintiff is an African-American woman who began working for Defendant in September 2023. (ECF No. 10, PageID.88, ¶ 8.) The last position she held with Defendant was that of a front desk receptionist. (*Id.*) According to Plaintiff, she was an "exemplary employee who performed her job in a satisfactory manner." (*Id.* at PageID.91, ¶ 30.)

Plaintiff states that she "suffers from autism which substantially interferes with major life activities, including, but not limited to thinking, reasoning[,] and communicating." (*Id.* at PageID.88, ¶ 9.) She alleges that "Defendant, its employees, agents and representatives [sic] knew or had reason to know that Plaintiff was on the autism spectrum and disabled." (*Id.* at PageID.88, ¶ 10.) She also alleges that "Defendant knew or had reason to know that Plaintiff had physical and mental characteristics as a disabled person and perceived and/or regarded Plaintiff as being disabled." (*Id.* at PageID.91, ¶ 36.)

2

Plaintiff claims that, while she was employed by Defendant, she "was harassed and discriminated against due to her disability, including but not limited to comments about her appearance that were only made because Plaintiff was disabled and not to any other similarly situated employer [sic] . . . ." (*Id.* at PageID.88–89, ¶ 15; *id.* at PageID.92, ¶ 40.) She further alleges that "[c]o-workers would harass and discriminate against Plaintiff due to her disability by mocking Plaintiff and harassing her due to her race, weight, gender, age, hair and disability." (*Id.* at PageID.88, ¶ 13.) Plaintiff states that "[o]n one occasion a co-worker told he [sic] 'you and whatever spectrum you're on needs to go away.'" (*Id.* at PageID.88, ¶ 11.) She was also "teased that she could not do math in her head or that she was spelling certain things wrong when she was not." (*Id.* at PageID.90, ¶ 26.) The First Amended Complaint does not state the frequency with which the teasing about Plaintiff's math and spelling abilities occurred.

Plaintiff separately identifies several comments that were allegedly made on a "daily basis" by certain co-workers (specifically, medical assistants) when Plaintiff started to wear her hair short. (*Id.* at PageID.89, ¶¶ 20–21.) The medical assistants told Plaintiff that she

3

"'looked like a boy,'" "'looked like a 40 year old auntie'" (allegedly a reference to "the stereotypical African-American maid that worked on a plantation"), "looked 'like Kris Jenner,'" and "had a toupee on top of her head." (*Id.*) Plaintiff was "so traumatized by the comments she started wearing wigs." (*Id.* at PageID.90, ¶ 24.)

In addition, one medical assistant allegedly asked Plaintiff if she was pregnant when she gained weight and then commented again when Plaintiff lost weight. (*Id.* at PageID.89, ¶¶ 16–18.)

Plaintiff "complain[ed] about . . . harassment and discrimination due to her race, weight, sex/gender[,] and disability to Defendant's upper management," including "Ali Berro, NP and her manager, Syeda Morshed." (*Id.* at PageID.101, ¶ 82; *see also id.* at PageID.92, ¶ 42; *id.* at PageID.90, ¶¶ 22, 28.) Plaintiff alleges that "Defendant's upper management [had] the ability to hire, fire, and take remedial measures, but Defendant failed to take prompt remedial measures" following her complaint(s). (*Id.* at PageID.90, ¶ 28.) Plaintiff indicates that, following her complaint(s), "Defendant and its agents, employees, and/or representatives retaliated against Plaintiff by . . . treating her worse and

engaging in even more offensive and hostile conduct and communication." (*Id.* at PageID.101, ¶ 83.)

Plaintiff alleges that "[e]verything Plaintiff did became a source of ridicule and embarrassment so that Plaintiff was forced to leave her employment." (*Id.* at PageID.90, ¶ 29.) She states that "Defendant's comments and conduct was done [sic] to encourage Plaintiff to quit or resign." (*Id.* at PageID.92, ¶ 41.) According to Plaintiff, "[t]he conditions became so intolerable Plaintiff was constructively discharged." (*Id.* at PageID.91, ¶ 31.) The First Amended Complaint does not specify the date on which Plaintiff's employment with Defendant ended.

Plaintiff states that, on or about March 26, 2025, the Equal Employment Opportunity Commission issued Plaintiff a Right to Sue letter that allowed her to file a complaint "for allegations under the [Americans with Disabilities Act (ADA)]." (*Id.* at PageID.91, ¶ 33.) Plaintiff then initiated this case on April 16, 2025. (ECF No. 1.) On May 23, 2025, Plaintiff filed a First Amended Complaint. (ECF No. 10.) The First Amended Complaint sets forth four counts:

- Count I: Violations of the ADA;

- Count II: Violation of Michigan's Persons with Disabilities Civil Rights Act (PWDCRA);

- Count III: Discrimination and harassment based on race, weight, and gender in violation of Michigan's Elliott-Larsen Civil Rights Act (ELCRA); and

- Count IV: Retaliation in violation of the ADA, PWDCRA, and ELCRA.

(*Id.* at PageID.91–102, ¶¶ 34–87.)

On June 6, 2025, Defendant filed a motion to dismiss the First Amended Complaint under Rule 12(b)(6). (ECF No. 11.) The motion is fully briefed. (ECF Nos. 13, 14.)

## II.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a facially plausible claim requires courts to construe the complaint in a light most favorable to the plaintiff, accept

all well-pleaded factual allegations as true, and decide whether there is enough factual content to allow 'the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mich. First Credit Union v. T-Mobile USA, Inc.*, 108 F.4th 421, 425 (6th Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Although for the purposes of [a] motion to dismiss [a court] must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *cited in Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

### III. Analysis

As noted above, Plaintiff alleges in the First Amended Complaint that Defendant violated the ADA, which is a federal law, and the PWDCRA and ELCRA, which are state laws. The Court begins its analysis by assessing Plaintiff's federal-law claims under the ADA in

Counts I and IV.[1] For the reasons set forth below, the Court finds that the federal-law claims fail and therefore dismisses Count I and the relevant portion of Count IV. The Court declines to exercise supplemental jurisdiction over the remaining state-law claims in Counts II, III, and IV. The state-law claims are thus dismissed as well. The Court, however, gives Plaintiff an opportunity to amend the complaint as discussed below.

### A. Violations of the ADA (Count I)

"Title I of the ADA prohibits employers from discriminating against a qualified individual because of a disability." *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.2(b), (e)). Plaintiff alleges in the body of Count I that Defendant violated the ADA by permitting her co-workers to discriminate against

---

[1] In analyzing Plaintiff's ADA claims, the Court draws on cases involving claims asserted under Title VII, the Age Discrimination in Employment Act (ADEA), and the Rehabilitation Act of 1973. The Sixth Circuit has determined that claims brought under these statutes are similar to and/or instructive in resolving claims asserted under the ADA. *See, e.g.*, *Kellar v. Yunion, Inc.*, 157 F.4th 855, 869–70 (6th Cir. 2025) (extending changes to the hostile-work-environment standard from an ADEA case to one involving the ADA); *Plautz v. Potter*, 156 F. App'x 812, 818 (6th Cir. 2005) (per curiam) (observing that there is "no significant difference between the substantive standards of the ADA and the Rehabilitation Act" when it comes to assessing claims of employment discrimination); *Hoover v. Timken Co.*, 30 F. App'x 511, 512 (6th Cir. 2002) ("Title VII cases . . . are instructive in interpreting the ADA." (citing *Kocsis v. Multi–Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996))).

and/or harass Plaintiff due to her autism. (ECF No. 10, PageID.91–95, ¶¶ 34–52.) The heading for Count I is titled "Violations of the [ADA]" but it does not specify what those violations are. (*Id.* at PageID.91.) Defendant's motion characterizes Count I as raising three possible ADA claims and/or theories of liability: (1) unlawful discrimination, (2) hostile work environment, and (3) constructive discharge. (ECF No. 11, PageID.116–122.)   Plaintiff   does   not   challenge   Defendant's characterization of Count I. (*See* ECF No. 13, PageID.156–163.)

Despite the parties' apparent agreement regarding how to interpret Count I, the Court will follow the lead of other courts in this Circuit that treat allegations of constructive discharge as a means of pleading unlawful discrimination rather than as a stand-alone claim for relief. *See, e.g.*, *Leath v. Sec'y of U.S. Dep't of Veterans Affairs*, No. 2:23-cv-11407, 2025 WL 968896, at *6 (E.D. Mich. Mar. 31, 2025) (collecting cases). The Court therefore treats Count I as raising two claims and/or theories of relief under the ADA: (1) that Defendant discriminated against (and ultimately constructively discharged) Plaintiff due to her disability and (2) that Defendant subjected Plaintiff to a hostile work environment due to her disability.

i.    Discrimination/Constructive-Discharge Claim

Plaintiff alleges in Count I that disability-based discrimination caused her working conditions to become so intolerable that she had no choice but to leave her job with Defendant. Plaintiff's allegations fail to state a claim upon which relief may be granted.

To avoid dismissal, Plaintiff must "state[] a claim for relief that is plausible, when measured against the elements of an ADA claim." *Darby*, 964 F.3d at 444 (citing *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)).[2] The Sixth Circuit has generally described ADA claims as

---

[2] Defendant argues that, to avoid dismissal, Plaintiff must state facts sufficient to establish a prima facie case of employment discrimination under the "burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)." (ECF No. 11, PageID.116–117.) As Defendant notes in its brief, *McDonnell Douglas* applies when there is "no direct evidence of discrimination." (*Id.* at PageID.116.) In the absence of such evidence, *McDonnell Douglas* places the burden on the plaintiff to establish a "prima facie case" of disability discrimination by demonstrating that "(1) she has a disability, (2) she is otherwise qualified for the job 'with or without reasonable accommodation,' (3) she 'suffered an adverse employment decision,' (4) her employer 'knew or had reason to know' of her disability, and (5) her position remained open, or she was replaced." *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566–67 (6th Cir. 2023) (quoting *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017)).

The Court will not require Plaintiff to allege a prima facie case of employment discrimination under *McDonnell Douglas*. The Sixth Circuit has explained repeatedly that *McDonnell Douglas* is an evidentiary standard that should not be used to assess the sufficiency of pleadings under Rule 12(b)(6). *See, e.g.*, *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) ("[I]t was error for the district court to require [the

having three elements: "[A] plaintiff must show that he or she (1) is disabled, (2) otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of his or her disability." *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016). The Sixth Circuit construes the ADA to require disability to have been the "but-for" cause of an adverse employment action and not merely a "motivating factor." *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 314–22 (6th Cir. 2012) (en banc).[3]

In this case, Plaintiff claims to have been constructively discharged when she resigned from her job with Defendant (*see* ECF No. 10,

---

plaintiff] to plead a prima facie case under *McDonnell Douglas* in order to survive a motion to dismiss."); *see also Washington v. Sodecia Auto.*, No. 25-1362, 2025 WL 2965835, at *2 (6th Cir. Oct. 21, 2025) (noting that a plaintiff "need not plead a prima facie case of race discrimination under the *McDonnell Douglas* framework because that case established 'an evidentiary standard, not a pleading requirement'" (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002))).

[3] *Lewis* construed an earlier version of the ADA that prohibited discrimination "because of" disability. *See* 681 F.3d at 313 (quoting 42 U.S.C. § 12112(a), Pub. L. No. 101-336, Title I, § 102, 104 Stat. 327, 331 (1990) (amended 1991)). The decision acknowledged that the ADA was amended in 2008 to prohibit discrimination "on the basis of" disability. *Id.* at 315. *Lewis* indicates that the change from "because of" to "on the basis of" "do[es] not change things." *Id.* at 315. Consistent with *Lewis*, later Sixth Circuit decisions continue to require disability to be the but-for cause of an adverse employment action. *See, e.g.*, *Darby*, 964 F.3d at 444.

11

PageID.93, ¶ 45) and does not allege that she was subjected to any other type of "adverse employment action."[4] A constructive discharge occurs for purposes of an ADA claim when "(1) the employer deliberately created working conditions that a reasonable person would perceive as intolerable, (2) the employer did so to force the employee to quit, and (3) the employee quit." *Cooper v. Dolgencorp, LLC*, 93 F.4th 360, 373 (6th Cir. 2024) (citing *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012)).

To avoid dismissal, then, Plaintiff must plausibly allege that (1) she is disabled, (2) she was qualified to perform her job with or without a reasonable accommodation of her disability, (3a) she was constructively discharged, in that Defendant deliberately created working conditions that a reasonable person would perceive as intolerable to force Plaintiff to quit, and (3b) she would not have been constructively discharged but for her disability. *See Darby*, 964 F.3d at 444 (describing what a plaintiff must plead to state a claim of unlawful discharge under the ADA);

---

[4] An adverse employment action is a "'materially adverse change in the terms and conditions of [the employee's] employment.'" *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014) (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004) (en banc)). A constructive discharge is a type of adverse employment action. *Leath*, 2025 WL 968896, at *6.

*Cooper*, 93 F.4th at 373 (describing what is necessary to establish that an employee was constructively discharged).

As part of making this claim, Plaintiff must state facts that support a plausible causal connection between her alleged disability and the creation of working conditions that a reasonable person would perceive as intolerable. *See Darby*, 964 F.3d at 447 (explaining that a plaintiff who asserts an ADA wrongful-discharge claim must "make a causal link between [her] disability and her termination at least plausible"); *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) ("[The] 'plausibility' standard [established] in *Twombly* and *Iqbal* . . . applies to causation in discrimination claims.").

Defendant argues that Plaintiff does not allege sufficient facts to support a plausible inference that she subjected to an adverse employment action (specifically, a constructive discharge) because of her disability.[5] (ECF No. 11, PageID.121–122.) The Court agrees.

---

[5] For purposes of its motion, Defendant does not challenge Plaintiff's allegations that she is disabled and that she was otherwise qualified for her job. (*See* ECF No. 11, PageID.158–159 & n.2.) But Defendant reserves the right to challenge these allegations should the case proceed past the motion-to-dismiss stage. (*Id.*)

The Sixth Circuit has identified the following factors as relevant to determining whether an employer deliberately created working conditions that a reasonable person would perceive as intolerable:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a [different] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001) (quoting and "expressly adopt[ing]" factors articulated in *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)).[6] Plaintiff does not allege that she was demoted, that her salary or job responsibilities were reduced, that she

---

[6] Although *Logan* addressed a claim of race discrimination under Title VII, courts in this Circuit have applied the *Logan* factors in ADA cases. *See, e.g.*, *Perry v. Indian Hill Exempted Vill. Sch. Dist.*, No. 1:20-cv-24, 2026 WL 183545, at *9 (S.D. Ohio Jan. 23, 2026); *Leonard v. Driscoll*, No. 23-cv-12866, 2025 WL 2275950, at *10 (E.D. Mich. Sept. 29, 2025); *Sobers v. Ascension Providence Hosp.*, No. 2:23-cv-12126, 2024 WL 1776335, at *5 (E.D. Mich. Apr. 23, 2024); *Tuttle v. Oehler*, No. 1:08 CV 288, 2011 WL 1298125, at *11 (N.D. Ohio Mar. 31, 2011). In addition, although *Logan* examined these factors as part of reviewing a motion for summary judgment, courts have regularly considered the *Logan* factors when determining whether a plaintiff states a claim for relief under Fed. R. Civ. P. 12(b)(6). *See, e.g.*, *Allen-Walker v. Shelby Cnty. Gov't*, No. 2:23-cv-2746-SHM-ATC, 2024 WL 3798006, at *3–6 (W.D. Tenn. Aug. 13, 2024); *Bender v. Gen. Dynamics Land Sys., Inc.*, No. 2:19-cv-13177, 2020 WL 4366049, at *4–5 (E.D. Mich. July 30, 2020); *Littlejohn v. Montgomery Cnty. Treasurer*, No. 3:16-CV-00350, 2017 WL 2861183, at *3 (S.D. Ohio July 5, 2017).

14

was reassigned to different responsibilities or a new supervisor, or that she was offered early retirement or continued employment on less favorable terms, so the question is whether she plausibly alleges "badgering, harassment, or humiliation by [Defendant] calculated to encourage [Plaintiff's] resignation." *See id.*

Construing the First Amended Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff's allegations do not support a plausible inference that she was constructively discharged by Defendant because of her disability (autism). The First Amended Complaint identifies the following conduct that is potentially relevant to her claim of disability-based discrimination[7] leading to a constructive discharge:

---

[7] Because the ADA requires disability to be the but-for cause of Plaintiff's discharge, *see Lewis*, 681 F.3d at 321, the Court will not consider comments about Plaintiff's hair and weight (*e.g.*, ECF No. 10, PageID.89, ¶¶ 16–18; *id.* at PageID.89, ¶ 20) when determining whether Plaintiff plausibly alleged that she was constructively discharged in violation of the ADA. On their face, these comments bear no relation to Plaintiff's disability. *See Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 816 (6th Cir. 2020) (observing that a plaintiff who claims she was constructively discharged must demonstrate a "nexus between [her] disability and the intolerable workplace"; it is not enough to show that she was a disabled employee who was subjected to intolerable working conditions); *Leath*, 2025 WL 968896, at *11 (collecting cases that hold that the "intolerable conduct complained of must be linked to discrimination" in the course of dismissing a constructive-discharge claim).

1. A co-worker told Plaintiff that "you and whatever spectrum you're on needs to go away." (ECF No. 10, PageID.88, ¶ 11.)

2. Co-workers commented that Plaintiff was "unable to spell or do simple math in her head." (*Id.* at PageID.92, ¶ 40.) The frequency of such comments is not specified.

3. Co-workers made "comments about [Plaintiff's] appearance that were only made because Plaintiff was disabled and not to any other similarly situated employe[e]." (ECF No. 10, PageID.88–89, ¶ 15; *id.* at PageID.92, ¶ 40.) Plaintiff provides no details regarding the nature of these comments, nor does she explain how a condition (autism) that she describes as interfering with "thinking, reasoning[,] and communicating" (*id.* at PageID.88, ¶ 9) led co-workers to comment on her appearance.

4. "Plaintiff complained to Defendant's upper management including Ali Berro and Syeda Morshed about the harassment and discrimination, but Defendant failed/refused to take remedial measures." (*Id.* at PageID.92, ¶ 42.)

Even if some or all of this conduct constituted "badgering, harassment, or humiliation" (*Logan*, 259 F.3d at 569), Plaintiff still fails to allege facts that support a plausible inference that Defendant deliberately created working conditions that any reasonable person in Plaintiff's shoes would have found intolerable. *See Littlejohn v. Montgomery Cnty. Treasurer*, No. 3:16-CV-00350, 2017 WL 2861183, at *3 (S.D. Ohio July 5, 2017) ("Even assuming *arguendo* that [the plaintiff's] employer did badger, harass, or humiliate her in order to produce a resignation, the manner in

16

which [the] [p]laintiff describes circumstances to meet only one out of seven [*Logan*] factors does not adequately demonstrate that a reasonable person would believe that her employer created *intolerable* working conditions." (emphasis in original)). "[I]ntolerability is a demanding standard." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 814 (6th Cir. 2020). To meet this standard, a plaintiff's work conditions must be "hellish, or at least close to it." *Id.* at 815. Even when construing her allegations in the light most favorable to Plaintiff, Plaintiff fails to plausibly allege that her co-workers' disability-related comments resulted in objectively intolerable working conditions. *See Carlisle v. Staffing Sols. Se., Inc.*, No. 1:16-CV-00334, 2017 WL 2274995, at *3 (E.D. Tenn. May 24, 2017) (granting a motion to dismiss a constructive-discharge claim and observing that "[o]ne or two comments, arguably . . . insensitive, do not result in a work environment that is so intolerable that it would force any reasonable employee to resign"); *see also Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 479 (6th Cir. 2002) ("[H]urt feelings are not enough to create a case of constructive discharge.").

Plaintiff's ADA discrimination/constructive-discharge claim is not aided by her allegation that Defendant "failed/refused to take remedial

17

measures" after she complained about "harassment and discrimination" to two members of "upper management." (ECF No. 10, PageID.92, ¶ 42.) Plaintiff's allegation that Defendant took no action under these circumstances does not support a plausible inference that Defendant deliberately created objectively intolerable working conditions due to Plaintiff's disability to force Plaintiff to resign. *See Bender v. Gen. Dynamics Land Sys., Inc.*, No. 2:19-cv-13177, 2020 WL 4366049, at *2, *5 (E.D. Mich. July 30, 2020) (holding that a plaintiff failed to plausibly allege that she had been constructively discharged despite the plaintiff pointing to her employer's inaction after she made "vague complaints of discrimination" to human resources on the basis of "race, age, and disability"); *Spann v. Tenn. Dep't of Corr.*, No. 1:25-cv-00005, 2026 WL 458295, at *1–2, *6 (M.D. Tenn. Feb. 17, 2026) (holding that a plaintiff failed to plausibly allege that she was constructively discharged despite claiming that, among other things, her employer failed to respond to her complaints about sexual harassment and gender-based discrimination).

Finally, Plaintiff's discrimination/constructive-discharge claim is not saved by conclusory allegations that set forth legal conclusions without any factual support. (*See, e.g.*, ECF No. 10, PageID.88, ¶ 13 ("Co-

18

workers would harass and discriminate against Plaintiff due to her disability by mocking Plaintiff and harassing her due to her race, weight, gender, age, hair and disability."); *id.* at PageID.92, ¶ 41 ("Defendant's comments and conduct was done [sic] to encourage Plaintiff to quit or resign."). Such allegations fail to "nudge[] . . . claims across the line from conceivable to plausible" (*Twombly*, 550 U.S. at 570). *See, e.g.*, *Iqbal*, 556 U.S. at 680–81 (rejecting "bare assertions" that amounted to "nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim"); *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 843 (6th Cir. 2024) ("[The plaintiff's] conclusory assertions that defendants' actions 'unreasonably interfered with [her] work performance,' without alleging supporting factual allegations, is insufficient for purposes of a motion to dismiss."), *abrogated on other grounds by Kellar v. Yunion, Inc.*, 157 F.4th 855 (6th Cir. 2025).

In sum, Plaintiff does not sufficiently allege that she was constructively discharged because of her disability. Plaintiff's allegations fall short of what courts in this Circuit have found sufficient to state a

claim of discrimination leading to constructive discharge,[8] and are similar to those that other courts have found insufficient to state a discrimination/constructive-discharge claim.[9] Plaintiff's disability discrimination claim in Count I is therefore dismissed.

---

[8] *See, e.g.*, *Gross v. Univ. of Toledo*, No. 3:25 CV 1162, 2026 WL 237444, at *1–2, *5–6 (N.D. Ohio Jan. 29, 2026) (plaintiff, a family medicine clinician, plausibly alleged that he had been constructively discharged when he elected to resign from a position with a teaching hospital effective as of the same date on which he had been told that his contract would expire unless he "modified his behavior"; plaintiff had no disciplinary history when he was told his contract would not be renewed; plaintiff was denied opportunities to develop as part of his employment and was blocked from performing his role as a Diversity, Equity, and Inclusion Officer by staff members who "'stated they felt he was receiving special treatment because he was African American and/or gay' and who referred to him as 'divisive' and 'immature'" (citations omitted)); *Allen-Walker*, 2024 WL 3798006, at *4–5 (plaintiff sufficiently alleged intolerable working conditions by stating that (1) her job responsibilities were reduced, (2) she was assigned menial or degrading work "on a regular and consistent basis," and (3) her direct supervisor repeatedly made inappropriate comments to her); *Sobers*, 2024 WL 1776335, at *1, *5 (plaintiff sufficiently alleged intolerable working conditions by alleging that her supervisors verbally abused her, falsely accused her of failing to meet the dress code, told her that she needed to wear sheer shirts, forced her to change seats frequently when pregnant, and threatened to terminate her when she had to leave work due to a medical emergency relating to her pregnancy).

[9] *See, e.g.*, *Spann*, 2026 WL 458295, at *1–2, *6 (plaintiff failed to allege "truly 'hellish' conditions so 'objectively intolerable' that a reasonable person would have felt compelled to resign" (quoting *Tchankpa*, 951 F.3d at 814)); *Knox v. Kaplan*, No. 5:24-CV-00241-KKC, 2025 WL 2166426, at *2 (E.D. Ky. July 30, 2025) (dismissing claim based on "offhand comments and isolated incidents"); *Ragland v. F & M Koz, Inc.*, No. 2:21-CV-02530-TLP-CGC, 2022 WL 945317, at *1–2, *8–9 (W.D. Tenn. Mar. 29, 2022) (dismissing claim based on racially insensitive comments); *Kaminski v. Hillman Grp., Inc.*, No. 1:19-CV-1010, 2021 WL 680110, at *1, *3 (S.D. Ohio Feb. 22, 2021) (dismissing claim by employee who alleged that a manager "accosted" and

ii.    Hostile-Work-Environment Claim

Plaintiff also fails to state a hostile-work-environment claim under the ADA in Count I.

A "disability-based hostile-work-environment claim" under the ADA requires a plaintiff to establish that:

> (1) [s]he is disabled; (2) [s]he "was subjected to harassment, either through words or actions, based on" [her] disability; (3) the harassment "creat[ed] an objectively intimidating, hostile, or offensive work environment" that "produce[d] 'some harm respecting an identifiable term or condition of employment'"; and (4) "there is some basis for liability on the part of the employer."

*Kellar v. Yunion, Inc.*, 157 F.4th 855, 873 (6th Cir. 2025) (quoting *McNeal v. City of Blue Ash*, 117 F.4th 887, 898, 904, 906 (6th Cir. 2024)).

Neither party cites case law that addresses whether a plaintiff must allege facts that plausibly satisfy each prong of this standard to survive a motion to dismiss under Rule 12(b)(6). Further, the Court has not found

---

"yelled" at him for reporting a safety issue); *Bender*, 2020 WL 4366049, at \*4–5 (working conditions alleged by the plaintiff did not "rise to the level of what a reasonable person would view as intolerable, at least as that concept has been interpreted by the courts" (citing *Logan*, 259 F.3d at 568–69)); *Littlejohn*, 2017 WL 2861183, at \*3 (alleged harassment did not plausibly create intolerable working conditions); *Carlisle*, 2017 WL 2274995, at \*3 (dismissing claim based on "arguably racially insensitive" comments).

21

a binding decision issued by the Sixth Circuit that addresses what is

required to plead a hostile-work-environment claim under the ADA.[10] At

---

[10] A recent Sixth Circuit decision addressing a Title VII sexual-harassment-based hostile-work-environment claim casts some doubt on whether *Kellar*'s four-part standard for an ADA hostile-work-environment claim should be used to assess the sufficiency of Plaintiff's allegations at the pleading stage. *See Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 376–77 (6th Cir. 2026). *Bruce* characterized the five-part test for Title VII hostile-work-environment claims as setting forth the "five elements of proof that comprise a plaintiff's prima facie case under the *McDonnell Douglas* burden-shifting framework." *Id.* at 376. Based on that characterization, *Bruce* concluded that it would be inappropriate to require a plaintiff to plead facts going to each of the five elements of a Title VII hostile-work-environment claim to survive a motion to dismiss. *See id.* at 376–77. *Bruce* instead indicated that a court should assess whether a complaint includes "'sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference' that [the plaintiff] was subjected to a hostile work environment." *Id.* (quoting *Keys*, 684 F.3d at 610); *see also Ogbonna-McGruder*, 91 F.4th at 839 (engaging in a similar analysis to *Bruce* when assessing what is required to plead a Title VII race-based hostile-work-environment claim but articulating a slightly different pleading standard than what is set forth in *Bruce*).

*Bruce*'s characterization of Title VII hostile-work-environment claims as being subject to *McDonnell Douglas* appears to conflict with the Sixth Circuit's prior determination that *McDonnell Douglas* plays no role in the hostile-work-environment context. *See Pollard v. E.I. DuPont de Nemours Co.*, 213 F.3d 933, 943 (6th Cir. 2000) ("When a plaintiff proves that a hostile work environment existed, there is no legitimate justification for such an environment, and thus recourse to the *McDonnell Douglas* test is not warranted."), *rev'd on other grounds sub nom. Pollard v. E.I. du Pont Nemours & Co.*, 532 U.S. 843 (2001); *see also Palermo v. Luxor Staffing, Inc.*, No. 3:25-CV-00499, 2026 WL 300771, at *9 (M.D. Tenn. Feb. 4, 2026) (determining that the "better view is that hostile-work-environment claims simply are not subject to the *McDonnell Douglas* framework"). In addition, *Kellar* (a 2025 ADA-specific decision) nowhere referred to *McDonnell Douglas* or a "prima facie case" when discussing the standard for establishing an ADA hostile-work-environment claim, *see*

a minimum, for Plaintiff's hostile-work-environment claim to survive Defendant's motion, Plaintiff must allege enough factual material to state a plausible claim that (1) she was harassed based on a disability; and (2) the harassment created a hostile work environment as that term has been defined in relevant case law. *See, e.g., Kellar*, 157 F.4th at 873 (setting out the standard for a disability-based hostile-work-environment claim in reviewing a summary-judgment ruling); *Ogbonna-McGruder*, 91 F.4th at 839 (requiring a plaintiff who asserted a Title VII race-based hostile-work-environment claim to allege that, among other things, she was harassed "based on race" and that the harassment was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment"); *Middleton v. United Church of Christ Bd.*, No. 20-4141, 2021 WL 5447040, at *3 (6th Cir. Nov. 22, 2021)

---

157 F.4th at 869–76, despite referring to these concepts when discussing the plaintiff's separate retaliation claim, *see id.* at 879–82.

In any event, because this case involves a claim brought under the ADA, the Court is not bound by decisions addressing Title VII hostile-work-environment claims. *See Kocsis*, 97 F.3d at 885 (describing Title VII decisions as "instructive" in cases involving the ADA). That said, Plaintiff's claim would fail even if the Court were to follow *Bruce*'s articulation of the pleading standard. As set forth herein, Plaintiff has not plausibly pleaded that she was subject to a hostile work environment, which is what *Bruce* requires.

(requiring a plaintiff who asserted a Title VII race-based hostile-work-environment claim to allege that, among other things, she was harassed based on her protected status and that the harassment was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment"); *see also Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 377–78 (6th Cir. 2026) (requiring a plaintiff who asserted a sexual-harassment-based Title VII hostile-work-environment claim to allege "'sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference' that [she] was subjected to a hostile work environment" (quoting *Keys*, 684 F.3d at 610)).

A hostile work environment exists when a "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 309 (6th Cir. 2016) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (addressing Title VII claim); *see also Kellar*, 157 F.4th at 870 (confirming that the definition of a hostile work environment articulated in *Smith* also applies to ADA claims). Hostile-

24

work-environment claims are measured against an "objective standard." *Kellar*, 157 F.4th at 872. Thus, it is not enough for a plaintiff to claim that she found the working conditions to be subjectively hostile or abusive. A plaintiff can prevail only if her work environment "'would reasonably be perceived . . . as hostile or abusive,'" *id.* (quoting *McNeal*, 117 F.4th at 904), which is a "high bar" for a plaintiff to overcome. *Id.*; *see also Khalaf v. Ford Motor Co.*, 973 F.3d 469, 485 (6th Cir. 2020) (noting that the standard for establishing a hostile work environment "sets a high bar for plaintiffs in order to distinguish meaningful instances of discrimination from instances of simple disrespect").[11]

"Allegations of 'simple teasing, . . . offhand comments, and isolated incidents (unless extremely serious)' do not suffice" to state a claim sufficient to survive a motion to dismiss under Rule 12(b)(6). *Ogbonna-McGruder*, 91 F.4th at 841 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *see also Bruce*, 168 F.4th at 379 (observing that

---

[11] The decisions cited in this paragraph address grants of summary judgment and similar rulings. These decisions are properly considered by the Court in deciding a motion to dismiss, given that they describe what constitutes a hostile work environment. The Sixth Circuit regularly looks to rulings on summary judgment and other post-discovery motions to determine whether a hostile work environment has been alleged under Rule 12(b)(6). *See, e.g., Bruce*, 168 F.4th at 377; *Ogbonna-McGruder*, 91 F.4th at 840–41; *Middleton*, 2021 WL 5447040, at *3, *4–*5.

"'occasional . . . offensive utterances' that are not 'physically threatening or humiliating' do not render a work environment hostile and discriminatory" (quoting *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008))); *Perry v. Sephora USA, Inc.*, 798 F. Supp. 3d 824, 835 (M.D. Tenn. 2025) (dismissing a plaintiff's ADA hostile-work-environment claim because "stray comments [alleged in the complaint]—while offensive— were not, standing alone, sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment").

Here, Plaintiff fails to allege sufficient facts to support a plausible inference that, due to disability-based harassment, her workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment.'" *Smith*, 813 F.3d at 309 (quoting *Harris*, 510 U.S. at 21). As noted above, Plaintiff identifies a single disparaging comment made by a co-worker regarding her autism. (ECF No. 10, PageID.88, ¶ 11 (alleging that a co-worker told Plaintiff that "you and whatever spectrum you're on needs to go away").) Taking this comment together with Plaintiff's allegations that she was teased by co-workers for her math and spelling abilities (*see, e.g.*, *id.* at

26

PageID.92, ¶ 40), Plaintiff has alleged at most instances of "simple teasing, . . . offhand comments, and isolated incidents" that fall short of the severe or pervasive harassment required to state a hostile-work-environment claim.[12] *See Ogbonna-McGruder*, 91 F.4th at 841 (quoting *Faragher*, 524 U.S. at 788); *see also Perry*, 798 F. Supp. 3d at 835 (holding that a plaintiff who was diagnosed with anxiety and obsessive-compulsive disorder failed to state a hostile-work-environment claim because "stray comments [that were generally critical of the plaintiff's mental health issues]—while offensive—were not, standing alone, sufficiently severe or pervasive to alter . . . the conditions of [the plaintiff's] employment"). Plaintiff does not allege that any disability-related comments and teasing were "sufficiently severe or pervasive to alter the conditions of [her] employment." *Smith*, 813 F.3d at 309.

Because Plaintiff does not plausibly allege that she was subjected to severe or pervasive harassment by her co-workers, she cannot rely on

---

[12] For the reasons previously stated when analyzing Plaintiff's discrimination/constructive-discharge claim, the Court considers only whether the instances of potential *disability-based* harassment alleged in the First Amended Complaint plausibly created a hostile work environment. Plaintiff does not cite to any legal authority that requires the Court to consider instances of non-disability-based harassment (e.g., harassment based on gender, race, or weight) when assessing whether Plaintiff has stated a hostile-work-environment claim under the ADA.

27

Defendant's purported failure to "take remedial measures" (ECF No. 10, PageID.92, ¶ 42) to state a claim that she was subjected to a hostile work environment due to her disability. "When the underlying offenses do not amount to abuse, management's failure to respond cannot be used to augment the claim and amount to a hostile environment." *Middleton*, 2021 WL 5447040, at *5.

Finally, Plaintiff's claim is not saved by her conclusory allegations that she was subjected to a hostile work environment. (*See, e.g.*, ECF No. 10, PageID.88, ¶ 12 ("As a result of Plaintiff's disability, she was intentionally targeted, bullied, badgered, humiliated, harassed and discriminated against which altered the terms and conditions of her employment and created an offensive and hostile work environment."); *id.* at PageID.88–89, ¶ 15 ("Plaintiff was harassed and discriminated against due to her disability . . . creating an offensive and hostile work environment due to her disability."); *id.* at PageID.90, ¶ 25 ("Plaintiff was harassed and discriminated against due to her autism creating an offensive and hostile work environment.").) A plaintiff cannot rely on "wholly conclusory" and "naked assertions" to state a claim for relief. *See Twombly*, 550 U.S. at 555; *see also Ogbonna-McGruder*, 91 F.4th at 841

28

(finding "conclusory assertions ... without supporting factual allegations," to be "insufficient for purposes of a motion to dismiss" a hostile-work-environment claim).

Plaintiff attempts to avoid dismissal by citing a case in her response (ECF No. 13, PageID.160) in which the Sixth Circuit observed that "whether conduct is severe or pervasive is 'quintessentially a question of fact.'" *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006) (quoting *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093 (10th Cir. 1999)). Plaintiff appears to take that statement to mean that it would be inappropriate for the Court to scrutinize the sufficiency of her allegations at this stage of the litigation. (*See* ECF No. 13, PageID.160–161.) But the Sixth Circuit has made it clear that a hostile-work-environment claim should be dismissed if a plaintiff fails to allege sufficient factual material to support a plausible inference that their workplace was characterized by severe or pervasive harassment. *See, e.g.*, *Ogbonna-McGruder*, 91 F.4th at 840 (affirming the dismissal of a Title VII hostile-work-environment claim because the plaintiff "did not sufficiently allege facts from which we may infer that the harassment she experienced was severe or pervasive"); *Bryant v. McDonough*, 72 F.4th 149, 152 (6th Cir. 2023)

29

(order) (affirming the dismissal of a disability-based hostile-work-environment claim brought under the Rehabilitation Act of 1973 because the plaintiff's "allegations, taken as true, d[id] not plausibly show that her work environment was pervasively discriminatory," given that "isolated incidents" in which a co-worker "spoke rudely to [the plaintiff] a couple of times" and "on a few other occasions . . . went out [of] her way to sit near [plaintiff]" were "insufficient as a matter of law to establish a severe or pervasively hostile work environment"), *abrogated on other grounds by Kellar*, 157 F.4th 855; *Middleton*, 2021 WL 5447040, at *4 (affirming the dismissal of a Title VII hostile-work-environment claim because the conduct described by the plaintiff "f[e]ll short of being sufficiently severe or pervasive . . . even after accepting her allegations as true and drawing all reasonable inferences in her favor"); *cf. Bruce*, 168 F.4th at 378 (affirming denial of a motion to dismiss a Title VII hostile-work-environment claim where the plaintiff's allegations amounted to more than "occasional offensive utterances" and instead supported the inference that one of her supervisors "consistently and continually directed sexualized comments at her in the presence of other employees"). Like the plaintiffs in *Ogbonna-McGruder*, *Bryant*, and

30

*Middleton*, Plaintiff fails to sufficiently allege that she was subjected to severe or pervasive workplace harassment because of a protected characteristic (here, her disability).

In sum, Plaintiff fails to state a plausible claim that she was subjected to a hostile work environment because of her disability while working for Defendant. The First Amended Complaint alleges, at most, an isolated comment and simple teasing, none of which suffices to state a claim for relief under the ADA. Plaintiff's hostile-work-environment claim in Count I is therefore dismissed.[13]

### B.    Retaliation Under the ADA (Portion of Count IV)

Plaintiff's claim for retaliation under the ADA (a portion of Count IV[14]) asserts that Defendant retaliated against her for complaining about

---

[13] Like the ADA claims asserted in Count I, Count II of the First Amended Complaint (which is asserted under the PWDCRA) alleges that Plaintiff was discriminated against/constructively discharged and subjected to a hostile work environment due to her disability. (ECF No. 10, PageID.95–98, ¶¶ 53–69.) Although the PWDCRA "substantially mirrors" the ADA, *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012), the Court expresses no opinion regarding the viability of Plaintiff's PWDCRA claim in Count II because, as discussed in Section III.C of this Opinion, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims.

[14] Plaintiff alleges in Count IV that Defendant retaliated against her in violation of the ADA, PWDCRA, and ELCRA. As set forth in Section III.C of this Opinion, the Court declines to exercise supplemental jurisdiction over Plaintiff's

31

"harassment and discrimination" (ECF No. 10, PageID.101, ¶ 82) by "treating her worse and engaging in even more offensive and hostile conduct." (*Id.* at PageID.101, ¶ 83.) This claim is dismissed for the same reason that her claims in Count I are dismissed: because Plaintiff's allegations fail to state a claim upon which relief may be granted.

The ADA prohibits employers from retaliating against employees who have "opposed any act or practice made unlawful by [the ADA] or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). In arguing that Plaintiff fails to state a claim of relation under the ADA, Defendant references the requirements for a "prima facie case of retaliation" under *McDonnell Douglas*.[15] (*See* ECF No. 11, PageID.127–

state-law claims. The Court therefore does not analyze Plaintiff's retaliation claims under the PWDCRA and ELCRA at this time.

[15] ADA retaliation claims that rely on indirect evidence are subject to the *McDonnell Douglas* burden-shifting standard. *See Pemberton v. Bell's Brewery, Inc.*, 150 F.4th 751, 767 (6th Cir. 2025) (citing *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014)). Under this standard, a plaintiff must initially set forth a "prima facie case of retaliation under the ADA." *Id.* A plaintiff sets forth a "prima facie case of retaliation under the ADA" by establishing that "(1) [s]he engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against [her]; and (4) there was a causal connection between the protected activity and the adverse action." *Id.* (quoting *Rorrer*, 743 F.3d at 1046). If the plaintiff makes that showing, the burden shifts to the employer to show that it

128.) But, as noted above, the Sixth Circuit generally disapproves of district courts requiring a plaintiff to allege each element of a *McDonnell Douglas* prima facie case at the pleading stage. *See, e.g.*, *Keys*, 684 F.3d at 609. Here, neither party cites a case that addresses what Plaintiff must allege (if not the elements of a prima facie case) for her ADA retaliation claim to survive Defendant's motion to dismiss.

In this case, the Court will not require Plaintiff to allege each aspect of a prima facie case of retaliation under *McDonnell Douglas*. Courts assessing employment retaliation claims on a motion to dismiss generally require a plaintiff to "plead facts supporting a reasonable inference that the employer took [an] adverse employment action against her because she engaged in protected activity." *Prida v. Option Care Enters., Inc.*, No. 23-3936, 2025 WL 460206, at *6 (6th Cir. Feb. 11, 2025) (citation omitted) (addressing a Title VII retaliation claim).[16] A plaintiff must, among other

---

had a legitimate reason for the adverse action, at which point the burden shifts back to the plaintiff to demonstrate that the reason proffered by her employer was pretext for retaliation. *See Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 419–20 (6th Cir. 2021) (addressing standards for establishing retaliation through indirect evidence under Title VII, the ADA, and the FMLA).

[16] *See also, e.g.*, *Washington v. Sodecia Auto.*, No. 25-1362, 2025 WL 2965835, at *3 (6th Cir. Oct. 21, 2025) (citing *Prida*, 2025 WL 460206, at *6); *Mustafa v. Ford Motor Co.*, No. 24-1763, 2025 WL 2720988, at *6 (6th Cir. Sept. 24, 2025) (declining

things, "plead facts to support a reasonable inference that there was a causal connection between her protected activity and the adverse employment action taken against her." *Id.* (citing *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 348–49 (6th Cir. 2021)).[17]

"In the retaliation context, the term 'adverse employment action' encompasses more than just actions that affect 'the terms, conditions, or status of employment.'" *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 419 (6th Cir. 2021) (quoting *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345 (6th Cir. 2008)). It includes "any conduct 'that would have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 419 (quoting *Hawkins*, 517 F.3d at 345). In the

---

to address whether the plaintiff "adequately pleaded a prima facie case of retaliation under the *McDonnell Douglas* framework" and instead focusing on whether he "put forth some allegation of causation that permits this court to plausibly infer a connection between the alleged protected activity and his termination"); *but see Parker v. Hankook Tire Mfg. Tenn., LP*, No. 23-5208, 2023 WL 10404971, at *3 (6th Cir. Dec. 21, 2023) (order) (stating that a plaintiff "must allege facts showing" each of the four elements of a prima facie case of retaliation to "state a retaliation claim").

[17] These pleading requirements overlap with some (but not all) of the components of a prima facie case of ADA retaliation. *See, e.g.*, *Pemberton*, 150 F.4th at 767. Because the Court concludes that Plaintiff does not allege that she was subjected to an adverse employment action, her retaliation claim fails regardless of whether the Court requires her to allege facts (1) showing each component of a prima facie case or (2) that meet the more streamlined pleading standards discussed above.

Sixth Circuit, a constructive discharge may constitute the requisite adverse employment action in instances where an employee's workplace became "so intolerable that a reasonable person would have felt compelled to leave." *Drabant v. Thompson*, 25 F. App'x 294, 295 (6th Cir. 2001) (addressing a Title VII retaliation claim).

Plaintiff's ADA retaliation claim fails because she does not allege facts that support a plausible inference that, because she engaged in a protected activity, the Defendant subjected her to an adverse employment action (including a constructive discharge). Plaintiff alleges only that (i) she complained to her supervisor and another member of "upper management" about "harassment and discrimination due to her . . . disability" (ECF No. 10, PageID.101, ¶ 82),[18] and (ii) "Defendant and

---

[18] Although Plaintiff's vague allegations shed little light on the substance of her complaint(s) about "discrimination and harassment due to her . . . disability" (ECF No. 10, PageID.101, ¶ 82), the Court assumes without deciding that Plaintiff has adequately alleged that she engaged in a protected activity under the ADA by complaining to members of Defendant's upper management about harassment and discrimination due to, among other things, her disability. *See Pemberton*, 150 F.4th at 767 (describing a "protected activity" for purposes of an ADA retaliation claim as "an 'action taken to protest or oppose a statutorily prohibited discrimination'" (quoting *Rorrer*, 743 F.3d at 1046)); *Moody v. MidMichigan Med. Ctr. Midland*, 704 F. Supp. 3d 772, 780 (E.D. Mich. 2023) (extending a decision regarding Title VII to hold that "protected activity" under the ADA includes "'complaints to management and informal protests of discriminatory employment practices'" (quoting *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014))).

its agents, employees, and/or representatives retaliated against Plaintiff by . . . treating her worse and engaging in even more offensive and hostile conduct and communication to the point where it was intolerable and no reasonable person would continue to work there" (*id.* at PageID.101, ¶ 83). Plaintiff does not back up her conclusory allegation that she was "treated worse" with any supporting facts that could support a plausible inference that she was indeed "treated worse." That omission is especially glaring here given that Plaintiff has not alleged sufficient facts to support a plausible inference that she was subjected to objectively intolerable working conditions at any point during her employment by Defendant. Plaintiff therefore fails to state a claim that she was subjected to an adverse employment action because she engaged in a protected activity.

In addition, Plaintiff does not allege facts that would support a reasonable inference that her complaint(s) about disability-related harassment and discrimination were causally connected to her alleged constructive discharge. *See Prida*, 2025 WL 460206, at *6. Plaintiff does not, for instance, allege that the conditions that compelled her to leave

36

her job with Defendant arose after she raised her complaint(s).[19] The

First Amended Complaint does not specify (i) when Plaintiff complained

to members of Defendant's upper management about discrimination or

harassment due to her disability (*see* ECF No. 10, PageID.101, ¶ 82); (ii)

when she believes that "Defendant and its agents, employees, and/or

representatives [began to] retaliate[] against Plaintiff by . . . treating her

worse" (*id.* at PageID.101, ¶ 83); or (iii) when she left her job with

Defendant due to what she alleges was a constructive discharge (*id.* at

---

[19] It is unclear whether alleging temporal proximity would be enough, on its own, to support a reasonable inference that Plaintiff's internal complaint(s) were causally linked to her alleged constructive discharge. The Sixth Circuit holds that, with rare exceptions, a plaintiff cannot establish causation solely by pointing to the fact that an adverse employment action closely followed the plaintiff's protected conduct. *See, e.g.*, *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448–50 (6th Cir. 2020). The Sixth Circuit thus generally requires plaintiffs to point to other indicia of retaliation beyond temporal proximity to establish a causal link between their protected activities and adverse employment actions. *See id.; see also Dixon v. Gonzalez*, 481 F.3d 324, 333–34 (6th Cir. 2007) (collecting cases). There appears to be some disagreement, however, as to whether a plaintiff must plead facts beyond temporal proximity to support an inference of causation at the pleading stage. *Compare Kinney v. McDonough*, No. 21-1414, 2022 WL 223633, at *7 (6th Cir. Jan. 26, 2022) (per curiam) (affirming dismissal of Title VII retaliation claim despite the plaintiff's allegations that "adverse employment actions occurred shortly after she engaged in protected activity" because such "proximity alone is not enough"), *with Finley v. Miami Univ.*, 504 F. Supp. 3d 838, 850 (S.D. Ohio 2020) (holding that a plaintiff provided enough factual material "to nudge her claims over the line at the pleading stage, but not by much" solely because her pleading indicated that retaliatory actions began about three months after she filed a discrimination complaint with the Equal Employment Opportunity Commission).

37

PageID.101, ¶ 83; *see also id.* at PageID.90, ¶ 29). In short, the First Amended Complaint provides no facts from which the Court could begin to reasonably infer a causal link between Plaintiff's alleged constructive discharge and her complaint(s) that she had been discriminated against and/or harassed due to her disability. *See Kinney v. McDonough*, No. 21-1414, 2022 WL 223633, at *7 (6th Cir. Jan. 26, 2022) (per curiam) (affirming dismissal of retaliation claim that lacked "sufficient facts supporting the causation requirement").

In sum, Plaintiff's ADA retaliation claim fails. Plaintiff does not plausibly allege that Defendant subjected her to an adverse employment action (specifically, a constructive discharge) because she complained to members of upper management about disability-based discrimination and harassment. Plaintiff's ADA retaliation claim asserted as part of Count IV is therefore dismissed.

### C. Remaining State-Law Claims (Counts II, III, and IV)

Given that Plaintiff's federal-law claims have been dismissed, Plaintiff's state-law claims asserted in Counts II and III and a portion of Count IV are the only remaining claims in the case. The Court must decide whether to exercise supplemental jurisdiction over these claims.

By statute, federal courts are granted supplemental jurisdiction over all claims that "are so related to claims in the action within [a federal court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A federal court may, however, "decline to exercise supplemental jurisdiction" over related state-law claims if, among other reasons, "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

The Sixth Circuit instructs that "[a] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims." *Burnett v. Griffith*, 33 F.4th 907, 915 (6th Cir. 2022) (quoting *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 454 (6th Cir. 2014)). There is "a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed" and courts thus elect to "retain[] residual jurisdiction 'only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh . . . concern over needlessly deciding state law issues.'" *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 584 (6th Cir. 2011) (quoting *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th

39

Cir. 2006)). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims . . . ." *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996)).

Here, the Court has dismissed Plaintiff's federal-law claims on Defendant's motion under Rule 12(b)(6). The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims based on the precedent referenced above. Accordingly, the Court dismisses without prejudice Counts II and III in their entirety along with the portion of Count IV that alleges violations of state law.[20]

## IV.   Conclusion

For the reasons set forth above, Defendant's motion to dismiss (ECF No. 11) is GRANTED. Plaintiff's ADA claims in Counts I and IV of the First Amended Complaint are conditionally dismissed without prejudice. Plaintiff's remaining state-law claims in Counts II, III, and IV are dismissed without prejudice.

---

[20] The Court will re-visit this determination if Plaintiff files a Second Amended Complaint that states a claim for relief under federal law. Plaintiff may therefore include state-law claims if she elects to file a Second Amended Complaint.

40

If Plaintiff wishes to correct the deficiencies that are identified in this Opinion and Order, she may file a Second Amended Complaint no later than fifteen days after the date on which this Opinion and Order is entered. Plaintiff may include state-law claims in the Second Amended Complaint because the Court will re-visit its determination not to exercise supplemental jurisdiction over such claims if it finds that the Second Amended Complaint states a claim for relief under federal law. If Plaintiff does not file a Second Amended Complaint by that date, Plaintiff's ADA claims will be dismissed with prejudice. The Court will enter a judgment to that effect (dismissing the ADA claims with prejudice and the state-law claims without prejudice), and the case will be closed.

Plaintiff should be advised that, in the event that she elects to submit an amended pleading, the Court may review her Second Amended Complaint prior to Defendant filing any responsive pleading or motion. If the Court determines based on that initial review that the amended pleading fails to address the deficiencies noted herein, the Court may rule *sua sponte* that the Second Amended Complaint fails to state a claim upon which relief may be granted, in which case the Court will enter a judgment that dismisses the ADA claims with prejudice and the state-

41

law claims without prejudice, thus closing the case. If Plaintiff files a Second Amended Complaint, the Court may, however, order Defendant to file a responsive pleading or motion before assessing the viability of the claims asserted in any Second Amended Complaint. Defendant will not, in any event, be required to respond to any Second Amended Complaint unless and until the Court orders Defendant to file a response.

IT IS SO ORDERED.

Dated: March 27, 2026              s/Judith E. Levy
     Ann Arbor, Michigan         JUDITH E. LEVY
                                United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 27, 2026.

s/L. Hosking
Case Manager

42